**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **MARK CHALMERS, # K-52081,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 15-cv-044-MJR** |
| | ) | |
| **ANGEL RECTOR,** | ) | |
| **VIPIN SHAH,** | ) | |
| **L. LONG,** | ) | |
| **KIMBERLY FARARI,** | ) | |
| **CHRISTINE BROWN,** | ) | |
| **RODERICK MATTICKS,** | ) | |
| **and UNKNOWN PARTY NURSE,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM AND ORDER</u>

**GILBERT, District Judge:**

Plaintiff is currently incarcerated at Pinckneyville Correctional Center ("Pinckneyville"), where he is serving a seven-year sentence.  On January 15, 2015, he filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983, claiming that medical staff at Pinckneyville have been deliberately indifferent to his serious medical conditions (Doc. 1).  Along with his complaint, he filed a motion for preliminary and permanent injunction (Doc. 2), seeking to be sent to an outside medical facility for the removal of foreign material he claims is inside a lesion on his nose, and for testing to determine if the lesion is cancerous.  Plaintiff suffered a spider bite near the bridge of his nose in 2013.  Since then, he states that the wound continues to shed tissue, giving him concern that he may have skin cancer.

Before the Court completed the initial required threshold merits review of the complaint pursuant to 28 U.S.C. § 1915A, Plaintiff filed a motion for leave to file an amended complaint

(Doc. 8).  In the body of the motion, he included several new factual allegations against a new Defendant, Pinckneyville Warden Thomas Spiller.  The Court denied the motion for leave to amend, because Plaintiff did not submit a comprehensive amended complaint containing all allegations against all Defendants in a single document (Doc. 10).  Plaintiff was ordered to submit a proper amended complaint on or before March 9, 2015, in order to have his new allegations considered as part of his claim.

Since the entry of that order, Plaintiff has submitted a plethora of proposed amended complaints or supplemental complaints, labeled variously as "Leave for Supplement(al) Complaint,"  "Leave to Amend Complaint," "Correction for Leave to Amend Complaint," and "Supplemental Complaint."  These proposed pleadings have not all been filed of record, but most of them were entered on the docket sheet as motions to amend or supplement the complaint. Many of the documents are duplicative of one another in whole or in part.  The documents fall into three general categories, as discussed below.

## Motions to Amend and/or Supplement the Pleadings (Docs. 13, 15, 16, 18, 19, 20, 21, and 22)

In order to conduct the § 1915A merits review of the complaint, the Court must first determine which of the documents submitted by Plaintiff should be considered as the operative complaint, and further, whether any supplemental pleadings shall be allowed.

### *Group One – Proposed Amended Complaints*

The first group of documents consists of pleadings that present claims against seven named Defendants (Rector, Shah, Long, Farari, Brown, Spiller,[1] and Matticks) and one John Doe Registered Nurse.  These include a twelve-page statement of claim with a total of 57 numbered paragraphs, as well as numerous attached exhibits.  Plaintiff filed this complaint as Doc. 15

---

[1] Pinckneyville Warden Thomas Spiller was not included as a Defendant in the original complaint, but is included in the proposed amended complaints.  The Clerk shall be directed to add him as a party.

(submitted Feb. 20, 2015), and then subsequently resubmitted it with minor corrections and/or additions as Doc. 16 (submitted March 2, 2015); submitted it again on March 12, 2015, as a corrected complaint (which was not filed on the docket pending review); and filed it a fourth time on March 24, 2015, as part of Doc. 18 (found at Doc. 18-1, pp. 6-15, and Doc. 18-2). Each of these pleadings shows a signature date by Plaintiff of February 10, 2015, and includes factual allegations covering the period between May 29 and December 30, 2014.

Finally, after submitting another flurry of documents described below (the second and third groups of pleadings), Plaintiff again re-submitted the proposed amended complaint on April 14, 2015. The Clerk noted the receipt of this proposed pleading on April 14, 2015, but no motion to amend was entered on the docket sheet for that date. The Court surmises that this omission may have been due to confusion over Plaintiff's filing of a "motion to petition further clarification for document 21, motion to amend/correct complaint" just a few days earlier (Doc. 22). The Clerk may have believed that the April 14 proposed pleading was intended as the proposed amendment to accompany the motion at Doc. 22. In any event, the April 14 proposed pleading, entitled "Correction for leave to amend complaint," is Plaintiff's most recently tendered complete amended complaint.

As Plaintiff was advised in the order granting leave to amend, an amended complaint supersedes and replaces the original complaint, rendering the original complaint void. *See Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n.1 (7th Cir. 2004). Thus, the Court will consider the most recently submitted corrected amended complaint, electronically transmitted on April 14, 2015, to be the operative complaint, along with the attached exhibits (the entire document totals 127 pages).

**IT IS THEREFORE ORDERED** that the Clerk **SHALL FILE** Plaintiff's April 14,

2015, proposed pleading, entitled "Correction for leave to amend complaint," consisting of 127 pages, as the Third Amended Complaint and exhibits.  Because this document supersedes the earlier pleadings construed as motions for leave to amend the complaint (Doc. 15 and Doc. 16), as well as the previously-filed amended complaint filed at Doc. 18, the motions to amend (Docs. 15 & 16) are **DENIED AS MOOT**.

### *Group Two – Proposed Supplements*

The second group of documents consists of five submissions labeled as "supplemental" complaints.  Each contains factual allegations about incidents that did not occur until after Plaintiff filed this action, and involve his further requests for medical treatment.  On February 17, 2015, Plaintiff submitted a proposed supplemental complaint regarding an incident involving only Defendant Long (Doc. 13; the pleading was not filed, but was docketed as a motion for leave to file supplemental complaint).  In that supplemental pleading, Plaintiff says the date of the incident was February 12, 2014.  However, the allegations suggest that he intended to list the year of the occurrence as 2015; if so, the events occurred after those described in the original complaint.

On March 9, 2015, he submitted another supplemental complaint, raising new claims against Defendants Shah and Long based on a March 5, 2015, incident (this proposed pleading was also not filed, pending review by the Court).  He submitted this same document again on March 24, 2015, along with another corrected primary complaint; this supplemental pleading was filed in the record at Doc. 18, pp. 1-5, and Doc. 18-1, pp. 1-5.  Much of this document concerns another attempt by Defendant Shah to perform a biopsy on Plaintiff's nose, but it also includes a claim that Defendant Shah falsely placed Plaintiff in segregation confinement.

On April 6, 2015, Plaintiff submitted yet another supplemental complaint, seeking to add

an account of his March 31, 2015, visit to Defendant Shah.  This pleading was not filed, but was noted on the docket as a motion to amend/correct complaint (Doc. 21).  Plaintiff then re-submitted this document on April 9, 2015, with the pages in a different order.  This time, the entire proposed pleading was filed as Doc. 22, entitled "motion to petition further clarification for document number 21, motion to amend/correct complaint."

Federal Rule of Civil Procedure 15(d) provides that:  "On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented."  FED. R. CIV. P. 15(d).  A party does not have an absolute right to file a supplemental pleading.  Rather, "the district court has substantial discretion either to permit or to deny such a motion."  *Chicago Reg'l Council of Carpenters v. Vill. of Schaumburg*, 644 F.3d 353, 356 (7th Cir. 2011).

Much of the material in the proposed supplemental pleadings designated as "Group Two" (Doc. 13; the March 9 unfiled document; Doc. 18 & Doc. 18-1, pp. 1-5; Doc. 21; and Doc. 22) is factually related to the core allegations in the operative Third Amended Complaint.  They describe Plaintiff's requests to Defendants Long and Shah for treatment and a biopsy of his nose lesion, as well as related problems.  These three encounters occurred in February and March 2015.  The factual allegations regarding medical treatment appear to be appropriate for inclusion in a supplemental complaint pursuant to Rule 15(d).  However, the "false imprisonment in segregation" claim against Defendant Shah is outside the scope of Plaintiff's claims for deliberate indifference to his medical needs.  Further, the fragmented and duplicative structure of the proposed supplements, as well as Plaintiff's confusing and overly verbose description of these incidents, make it difficult for the Court to understand his narrative and discern his claims.

For the same reasons, it would be burdensome for the Defendants to respond to these piecemeal supplements.

Accordingly, Plaintiff's motions for leave to file these supplemental pleadings (Docs. 13, 18, 21, and 22) are **DENIED,** and the Clerk is **DIRECTED** to **STRIKE FROM THE RECORD** those supplements that have already been docketed (Docs. 18 and 22).  However, the denial of leave to file these documents is without prejudice to Plaintiff re-submitting one more motion for leave to file a supplemental complaint, under the following conditions:  (1) along with his motion for leave to file, Plaintiff must submit ONE proposed supplemental pleading, labeled "Proposed Supplemental Complaint," which must be clearly dated and bear Case No. 15-cv-44-MJR; (2) all supplemental factual allegations must be contained in that single proposed supplemental complaint, stated legibly and in chronological order; (3) the proposed supplemental complaint shall be limited to facts concerning Plaintiff's medical condition and treatment which have arisen after January 15, 2015, and should not include legal argument or legal citations; (4) if Plaintiff chooses to submit a proposed supplemental complaint, he shall transmit it to the Court only **ONE** time, unless the Court directs otherwise.

If Plaintiff submits a motion for leave to file supplemental complaint and proposed supplemental complaint, the Court, in its discretion, shall determine whether or not to permit the supplemental complaint to be filed of record.  *See* FED. R. CIV. P. 15(d).  There is no guarantee that a supplemental complaint will be accepted.  If the Court approves the filing of a supplemental complaint, that document will not replace the Third Amended Complaint, but will be docketed as an additional pleading.

### *Group Three – Proposed Supplements*

The third group consists of two more proposed supplemental complaints, which raise

issues having nothing to do with Plaintiff's medical problems.  On March 25, 2015, Plaintiff submitted a new proposed supplemental pleading, which was noted on the docket as a motion to amend/correct the complaint (Doc. 19).  This proposed pleading was not filed, pending review by the Court.  It states that Plaintiff was temporarily placed in solitary confinement on March 5, 2015, for allegedly verbally abusing Defendant Shah.  The thrust of these allegations, however, is that on March 16, 2015, Defendant Spiller prevented Plaintiff from attending the disciplinary hearing on the charges that landed him in solitary confinement.

On March 31, Plaintiff tendered another supplemental complaint, most of which is a near-duplicate of the March 25 document.  This one was noted on the docket as a motion for leave to file supplemental complaint (Doc. 20), and also was not filed of record.  The only difference between the two pleadings is that the March 31 document includes the information that on March 16, Plaintiff was found guilty in absentia of two conduct violations (intimidation/threats and insolence), and his punishment included the revocation of one month of good conduct credits.

The proposed supplements designated as "Group Three" (Doc. 19 and Doc. 20), raise an entirely new claim regarding a disciplinary hearing on March 16, 2015.  This matter is only tangentially linked to the medical deliberate indifference claims which Plaintiff attempted to raise through the other supplemental pleadings discussed and rejected in "Group Two" above.  (Plaintiff alleges that the disciplinary ticket arose from his March 5 encounter with Defendant Shah).  Moreover, the claim did not even arise until after the instant action was filed.  Because this claim is distinct from and unrelated to the claims involving Plaintiff's medical treatment, the motion to file the March 25 supplement (Doc. 19), as well as the motion to file the March 31 supplement (Doc. 20) are both **DENIED**.

Should Plaintiff wish to bring any challenge to the disciplinary proceedings or sanctions, he must do so in a separate action, not in the present case.   Further, because the discipline imposed included the loss of good conduct credits, it may only be challenged in federal court in a habeas corpus action, and then only after Plaintiff first exhausts his remedies through the Illinois state courts.

**The Third Amended Complaint – Factual Allegations**

The operative complaint, which shall be filed of record in accordance with this order, consists of 17 pages, and is labeled "Correction for Leave to Amend Complaint."   It also includes numerous exhibits.

Plaintiff's main medical complaint is a persistent lesion on the bridge of his nose.   He says that he suffered a spider bite there in July or August 2013 (Third Amended Complaint, ¶ 32;[2] Exhibit E).   Since then, the skin in that area has continued to decay and fall off, exposing raw flesh, and would then re-grow and repeat the cycle.   He claims there is a piece of a "foreign stitch" remaining inside the wound (¶¶ 13, 15).   He has suffered recurring pain from the nose lesion, including pain in his eyes and ears, as well as migraines.   His breathing is impaired and interferes with his sleep.   He is afraid that the persistent wound and continual loss and regrowth of tissue indicates that he has developed skin cancer on his nose.

On May 29, 2014, Plaintiff was evaluated by Defendant Nurse Rector for the nose wound, congestion, eye pain, and frequent migraine (¶¶ 13-18).   She attempted to remove the stitch without success.   Following this "improvised surgery," she concluded no foreign material was present (¶ 48).   Plaintiff claims she denied him any further treatment, and his pain and the abnormal skin growth continued.

---

[2] All references in this section are to the numbered paragraphs in the Third Amended Complaint, and/or to the Exhibits accompanying it.

On June 6 and June 13, 2014, Plaintiff asked Defendant Nurse Long for assistance to have the stitch inside his nose removed, and complained of congestion, eye, and ear pain (¶¶ 19-21).  She gave him Tylenol and allergy medicine, but did not refer him to the doctor. Plaintiff was charged a co-payment for these visits.

On June 21, 2014, Plaintiff visited the Unknown (John Doe) Defendant Nurse.  Plaintiff requested a doctor referral for "probable symptoms of skin cancer" or infection, migraines, and chronic eye irritation (¶ 22).  Plaintiff refused to pay the co-payment for what he considered to be a chronic, ongoing problem.  He was not referred to the doctor or given other treatment (¶¶ 22-23).  He filed complaints over the denial of medical care on June 9 and July 4, 2014, against Defendant Long and the John Doe Defendant.

On July 28, 2014, Plaintiff was called to see Defendant Nurse Farari for the same symptoms.  She gave him Tylenol but did not refer him to the doctor.  He was charged another co-payment.  His symptoms got worse, leading to an intensely painful "flaring malanism [sic] covering entire bridge of nose" (¶¶ 29-30).  By August 5, 2014, Plaintiff considered suicide because of his physical distress and his inability to get a doctor referral.

On August 8, 2014, Plaintiff finally saw Defendant Doctor Shah about his nose lesion and the stitch that he believed was still present.  Defendant Shah said nothing more could be done about the stitch, and told him he would prescribe antibiotic ointment and a bandage (¶ 32). Plaintiff says he never received those items.

Plaintiff again put in for a nurse sick call, and saw Defendant Long on August 14, 2014. He was still having nasal congestion, ear, eye, and facial pain.  She led him to believe he would be seen again by the doctor, but that did not happen.  On August 21, he asked Defendant Nurse Farari for medical assistance, but she refused, saying he was "a perpetual grievance writer"

(¶¶ 34-35).

Plaintiff attempted to hang himself and was put on suicide watch in September 2014 (¶ 36).

He requested medical care for the nose lesion again, and Defendant Long referred him to the doctor.  On December 23, 2014, Defendant Shah told Plaintiff he would be scheduled to undergo a biopsy at an outside facility.  However, on December 30, Defendant Shah called Plaintiff in to explain that because of funding, no outside referral would be done.  Instead, Defendant Shah himself would perform the biopsy of the nose wound.  Defendant Shah allegedly told Plaintiff that the biopsy would leave a huge scar, and showed him a surgical utensil indicating it would make a three-inch diameter incision.  He told Plaintiff that no pain medication would be used during the procedure, and that he would not stitch the wound closed.  Plaintiff begged for pain medication and stitches, but Defendant Shah refused.  Plaintiff then declined to have the biopsy and was sent away (¶¶ 38-40).

Plaintiff submitted a number of grievances over the delays and denial of medical care, which were denied by Defendant Brown and/or the grievance officer and Administrative Review Board (¶¶ 41-47).

In summary, Plaintiff claims that Defendant Rector ignored his requests for further medical attention after she unsuccessfully attempted to remove the stitch from his nose.  Defendants Long, Farari, and the John Doe Nurse refused to refer him to the doctor, and delayed his eventual referral, causing him to continue suffering pain and allowing his conditions to go untreated.  Defendant Shah allowed financial considerations to override the medical need for an outside provider to perform a biopsy of Plaintiff's nose lesion, and then told Plaintiff he could undergo the biopsy, but without anesthesia (¶¶ 48-52).

Additionally, he faults Defendant Warden Spiller for failing to secure treatment for him after he filed emergency grievances.  Likewise, Defendant Brown failed to redress the lack of medical care through the grievance process.  Defendant Mattick, the regional medical director, also failed to ensure that Plaintiff received proper medical care (¶¶ 53-56).

Plaintiff seeks preliminary and permanent injunctive relief, ordering Defendants to send him to an outside medical facility for evaluation and treatment of his nose lesion and possible skin cancer.  He also requests compensatory and punitive damages.

**Merits Review Pursuant to 28 U.S.C. § 1915A**

Under § 1915A, the Court is required to conduct a threshold review of the complaint, and to dismiss any claims that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from an immune defendant.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit."  *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000).  An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The claim of entitlement to relief must cross "the line between possibility and plausibility."  *Id*. at 557.  Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim.  *Brooks v.*

*Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id.* At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Based on the allegations of the complaint, the Court finds it convenient to divide the *pro se* action into the following counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

> **Count 1:** Eighth Amendment claim for deliberate indifference to medical needs against Defendants Rector, Long, Farari, and the John Doe Nurse, for denying Plaintiff medical treatment for his nose lesion and other painful conditions, and denying or delaying a referral for him to see the doctor;

> **Count 2:** Eighth Amendment claim for deliberate indifference to medical needs against Defendant Shah, for canceling Plaintiff's biopsy of his nose lesion from an outside provider based on cost, and refusing to provide Plaintiff with any pain relief for the biopsy he offered to perform at the prison;

> **Count 3:** Deliberate indifference claim against Defendant Spiller, for failing to require the medical Defendants in Counts 1 and 2 to provide care to Plaintiff in response to his emergency grievance(s);

> **Count 4:** Deliberate indifference claims against Defendants Brown and Matticks, for failing to require the medical Defendants in Counts 1 and 2 to provide care to Plaintiff.

Taking Plaintiff's factual allegations as true, he shall be allowed to proceed with his deliberate indifference claims in Counts 1 and 2. However, Counts 3 and 4 fail to state a claim upon which relief may be granted, and shall be dismissed.

**<u>Count 1 – Deliberate Indifference to Medical Needs – Denial and Delay of Treatment</u>**

In order to state a claim for deliberate indifference to a serious medical need, an inmate must show that he (1) suffered from an objectively serious medical condition; and (2) that the defendant was deliberately indifferent to a risk of serious harm from that condition.  *See Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012).  The Seventh Circuit considers the following to be indications of an objectively serious medical need: (1) where failure to treat the condition could "result in further significant injury or the unnecessary and wanton infliction of pain"; (2) "[e]xistence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment"; (3) "presence of a medical condition that significantly affects an individual's daily activities"; or (4) "the existence of chronic and substantial pain."  *Gutierrez v. Peters,* 111 F.3d 1364, 1373 (7th Cir. 1997).

As to the subjective component of the claim, "[d]eliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk.  Delaying treatment may constitute deliberate indifference if such delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Gomez*, 680 F.3d at 865 (internal citations and quotations omitted).  *See also Farmer v. Brennan*, 511 U.S. 825, 842 (1994).  However, the Eighth Amendment does not give prisoners entitlement to "demand specific care" or "the best care possible," but only requires "reasonable measures to meet a substantial risk of serious harm."  *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).  Further, a defendant's inadvertent error, negligence or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation.  *See Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008).

Plaintiff's description of the lesion on his nose, which has allegedly failed to heal over a lengthy period of time, is arguably an objectively serious medical condition. Defendant Shah's determination that a biopsy was indicated in order to diagnose the problem and screen for possible skin cancer supports this conclusion. In addition, Plaintiff's persistent facial pain, at least some of which appears to be related to the nose condition, and his migraines, indicate objectively serious condition(s) in need of treatment. The remaining question is whether the Defendants responded to Plaintiff's complaints with deliberate indifference.

Several of the actions described by Plaintiff do not amount to deliberate indifference. These include Defendant Rector's unsuccessful attempt to remove the stitch that Plaintiff believes is still embedded in the nose wound. The mere fact that a treatment has proved ineffective does not state an Eighth Amendment claim. *See Duckworth v. Ahmad*, 532 F.3d 675, 680 (7th Cir. 2008). Likewise, Defendant Long responded to Plaintiff's request for help by providing him with Tylenol and allergy medication on at least one occasion, and Defendant Farari gave him pain medication.

The gist of Plaintiff's deliberate indifference claim, however, is that these Defendants as well as the John Doe Nurse refused to refer him to the doctor, and on some occasions refused to provide him with further treatment, all of which prolonged his suffering and delayed his eventual evaluation by Dr. Shah. Such delay may implicate the Eighth Amendment.

The Court notes that Plaintiff's complaints over being required to pay multiple co-payments for his medical visits do not amount to a constitutional violation, and shall not be considered in this action. For example, when Plaintiff requested a doctor referral on June 21, 2014, from the Unknown (John Doe) Defendant Nurse, he refused to pay another co-payment, and was thus denied the referral. As such, any delay in care resulting from that decision was due

to Plaintiff's own conduct.  Plaintiff's Exhibit A, consisting of his medical records, is replete with notations that he refused to agree to pay the co-payment, claiming that his condition was chronic and he should not be charged.

If Plaintiff's refusal to pay delayed his treatment, he cannot complain of a constitutional violation for that delay.  "The Eighth Amendment does not compel prison administrators to provide cost-free medical services to inmates who are able to contribute to the cost of their care." *Poole v. Isaacs*, 703 F.3d 1024, 1026 (7th Cir. 2012).  And an inmate who "opt[s] to refuse treatment rather than part with his money" cannot prevail on an Eighth Amendment claim because "[e]ven though he was in pain until he received treatment, the delay in receiving care was of his own making."  *Id.* at 1027.

There are several exemptions from the medical co-payment requirement under the Illinois statute, including for chronic illnesses, for follow-up visits, and for prisoners who meet the statute's definition of indigency.  *Id.* at 1027; 730 ILL. COMP. STAT. 5/3-6-2(f).  Whether or not a statutory exemption should apply to the co-payment rule is a question of state law, and not cognizable in a § 1983 action.  Inmates who disagree with the assessment of a co-payment may avail themselves of the institutional grievance process, and may pursue the matter in state court.

Further factual development will be necessary to evaluate whether the actions of Defendants Rector, Long, Farari, and/or the John Doe Nurse rose to the level of deliberate indifference to Plaintiff's serious medical need(s).  Accordingly, **Count 1** shall proceed for further consideration.

## Count 2 – Deliberate Indifference to Medical Needs – Defendant Shah

In Plaintiff's first encounter with Defendant Shah, the doctor prescribed treatment (ointment and a bandage) for Plaintiff's nose lesion.  The allegation that Plaintiff never received

these items does not establish that Defendant Shah was at fault for the failure to fulfill the prescriptions. These statements do not indicate that Defendant Shah was deliberately indifferent to Plaintiff's nose condition, even though he said nothing could be done about the stitch that Plaintiff believed was still in the wound.

Defendant Shah's handling of the biopsy of Plaintiff's nose lesion, however, raises a potential deliberate indifference claim. Having initially recommended that Plaintiff's condition warranted attention from an outside medical provider, Defendant Shah's alleged cancellation of that order due to cost concerns suggests a possible departure from professional medical judgment. Choosing a treatment for a prisoner based on cost and not efficacy may be evidence of deliberate indifference. *See Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006). Defendant Shah's subsequent decision to conduct the procedure himself, while indicating to Plaintiff that it would be painful and disfiguring, put Plaintiff in a position where he could only get the biopsy if he consented to endure it without anesthesia or sutures. This incident may have led to further delay in providing Plaintiff with additional examination or treatment of the nose lesion. On the other hand, the punch biopsy referenced in Plaintiff's medical records (Exhibit A) may turn out to be a procedure that is ordinarily performed in a doctor's office in the manner proposed by Defendant Shah.

At this stage, Plaintiff's allegations of deliberate indifference are not subject to dismissal under § 1915A. **Count 2** against Defendant Shah shall also proceed for further review.

**Dismissal of Count 3 – Denial of Emergency Grievances**

Plaintiff's only allegation against Defendant Warden Spiller is that he failed to obtain medical care for Plaintiff after receiving his emergency grievance (the complaint is not clear on whether Plaintiff submitted more than one emergency request) (¶ 53).

If a prisoner is under the care of prison medical professionals, a non-medical prison official such as the warden "will generally be justified in believing that the prisoner is in capable hands." *Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011) (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004)).  On the other hand, a prison official may be found to be deliberately indifferent to a prisoner's serious medical needs if "they have a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner." *Hayes v. Snyder,* 546 F.3d 516, 527 (7th Cir. 2008); *see also Reed v. McBride,* 178 F.3d 849, 854-56 (7th Cir. 1999) (warden was required to act when prison officials repeatedly denied an inmate life-sustaining medication and food).

In the present case, Plaintiff gives no facts regarding the content of his emergency grievance(s) or any other communication he may have had with Defendant Spiller.  Instead, his claim consists of conclusory and confusing verbiage such as:

> [B]y failing to derogate inadequate claims of perpetual community nurse aid through redress of plaintiff['s] emergency grievance after declaring malady inconsequential.   In concert with staff misconduct therefor severe injurious claims, furthering the improvidence of staff misconduct fail to dejure [sic] retrospect of accusation or confer with medical personnel . . . causing plaintiff Chalmers pain, suffering, physical significant injury or future harm and emotional distress.

(¶ 53).

This is insufficient to state a deliberate indifference claim against Defendant Spiller.  *See Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).  *See also Perez v. Fenoglio*, 792 F.3d 768, 782 (7th Cir. 2015) (non-medical officials may be held liable for deliberate indifference to an inmate's medical needs where they knew of the plaintiff's serious medical condition and inadequate medical care through his "coherent and highly detailed grievances and other correspondences," yet failed to intervene to rectify the situation).  Plaintiff's complaint fails to

indicate that Defendant Spiller had this level of knowledge regarding his condition and efforts to obtain treatment.  Accordingly, **Count 3** shall be dismissed without prejudice.

However, because Plaintiff is seeking injunctive relief, Defendant Warden Spiller shall remain in the action at this time, in his official capacity only.  *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) (proper defendant in a claim for injunctive relief is the government official responsible for ensuring any injunctive relief is carried out).

### Dismissal of Count 4 – Defendants Brown and Matticks

Defendant Brown is Pinckneyville's Health Care Administrator.  Defendant Matticks is the Regional Medical Director of Wexford Health Sources (the company that provides contracted medical services at Pinckneyville).  The complaint does not suggest that either of these individuals had any involvement in the actions taken or alleged failure to act by the nurses and doctor who saw Plaintiff at his various medical visits.

Plaintiff mentions Defendant Brown only in connection with several grievances which she denied in June, July, and August 2014 (¶¶ 42, 44).  He went on to further appeal those grievances, without success.  He now seeks to hold her liable for deliberate indifference to his medical needs (¶ 54).

The Seventh Circuit instructs that the alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim."  *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011).  Plaintiff's only claim of misconduct against Defendant Brown is that she improperly denied some of his grievances, failing to redress his complaints against the nurses and/or doctor to his satisfaction.  There is nothing to suggest that the contents or volume of Plaintiff's grievances elevated Defendant Brown's awareness of his medical condition and need for treatment to a point where a deliberate indifference claim might

lie against her.  *See Perez*, 792 F.3d at 782.  For these reasons, the Third Amended Complaint does not state a constitutional claim against her upon which relief may be granted.  The claims against Defendant Brown in **Count 4** shall thus be dismissed without prejudice.

Finally, Plaintiff's allegations against Defendant Matticks focus on the co-payment policy (¶ 55).  According to Plaintiff, Defendant Matticks is "the orchestrator of prison medical policy . . . that thwart plaintiff vital adequate or competent medical aid . . . solely for financial co-fee for malady when previous paid therefore on plentiful occasions without plaintiff['s] malady being cured."  *Id.*  As pointed out above, the policy of requiring inmates to pay a small fee in order to receive medical care, which is in fact required by Illinois statute,[3] is not itself unconstitutional.  *Poole v. Isaacs*, 703 F.3d 1024, 1027 (7th Cir. 2012).  Plaintiff fails to state a claim against Defendant Matticks upon which relief may be granted, based on his dispute over the co-payment rule and practices.  This claim against Defendant Matticks in **Count 4** shall be dismissed with prejudice.

**<u>Other Pending Motions</u>**

Along with the original complaint, which was previously superseded by subsequent filings and will now be replaced by the Third Amended Complaint, Plaintiff filed a "petition for preliminary injunction and permanent injunction" (Doc. 2).  In it, he claims that the lesion on his nose, originally caused from a poisonous spider bite, and which allegedly still contains a "foreign thread," presents an "imminent irreparable harm" because of its "probable link sign to skin cancer."  *Id.*  He asks to immediately be sent to an outside hospital to undergo surgery to remove the "thread foreign material" and be tested for "probable skin cancer."

---

[3] "The Department *shall require* the committed person receiving medical or dental services on a non-emergency basis to pay a $5 co-payment to the Department for each visit for medical or dental services." 730 ILL. COMP. STAT. 5/3-6-2(f) (emphasis added).

The United States Supreme Court has emphasized that a Apreliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion.@  *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 870 (7th Cir. 2006) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original)).  In considering whether to grant injunctive relief, a district court must weigh the relative strengths and weaknesses of a plaintiff's claims in light of a five-part test that has long been part of the Seventh Circuit=s jurisprudence.

Specifically, a plaintiff must establish: (1) that there is a reasonable or substantial likelihood that he would succeed on the merits; (2) that there is no adequate remedy at law; (3) that absent an injunction, he will suffer irreparable harm; (4) that the irreparable harm suffered by plaintiff in the absence of the injunctive relief will outweigh the irreparable harm that defendants will endure were the injunction granted; and (5) that the public interest would be served by an injunction.  *Teamsters Local Unions Nos. 75 and 200 v. Barry Trucking*, 176 F.3d 1004, 1011 (7th Cir. 1999).  *Accord Judge v. Quinn*, 612 F.3d 537, 546 (7th Cir. 2010); *Pro=s Sports Bar & Grill, Inc. v. City of Country Club Hills*, 589 F.3d 865, 872-73 (7th Cir. 2009).

Without expressing any opinion on the merits of any of Plaintiff=s other claims for relief, the Court is of the opinion that a preliminary injunction should not be issued at this time.  The Third Amended Complaint raises questions as to whether some Defendants delayed or denied medical care for Plaintiff's nose lesion.  However, it also shows that Plaintiff received treatment on several occasions, including an attempt to remove the alleged foreign stitch/thread (when nothing was found), and an opportunity, however unappealing, to have a biopsy performed at the prison by Defendant Shah.  Although his claims shall receive further review, the record at this time does not reveal a reasonable or substantial likelihood that Plaintiff will succeed on the

merits, or that he will suffer irreparable harm in the absence of injunctive relief.  Nor are the other factors met at this time.

Accordingly, Plaintiff's motion for injunctive relief (Doc. 2) is **DENIED** at this stage, but without prejudice to another such motion being filed, at any time that Plaintiff believes he can show that injunctive relief is warranted.  The denial of the motion at this time shall not affect the Court's future consideration of Plaintiff's request for a permanent injunction, which is contained in the Third Amended Complaint.

Plaintiff's motion for recruitment of counsel (Doc. 4) has only one page and one attached letter.  The second (signature) page of the motion was misfiled under Plaintiff's motion for leave to proceed IFP (*See* Doc. 3, p. 2).  The single attached rejection letter from the Chicago Lawyers' Committee for Civil Rights Under Law (Doc. 4, p. 2) indicates that Plaintiff made only a perfunctory effort to obtain counsel on his own.  Plaintiff does not describe any other efforts he has made to seek legal representation.

There is no constitutional or statutory right to counsel in federal civil cases.  *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010); *see also Johnson v. Doughty*, 433 F.3d 1001, 1006 (7th Cir. 2006).  Nevertheless, the district court has discretion under 28 U.S.C. § 1915(e)(1) to recruit counsel for an indigent litigant.  *Ray v. Wexford Health Sources, Inc.*, 706 F.3d 864, 866–67 (7th Cir. 2013).

When a *pro se* litigant submits a request for assistance of counsel, the Court must first consider whether the indigent plaintiff has made reasonable attempts to secure counsel on his own.  *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013) (citing *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007)).  If so, the Court must examine "whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently

present it." *Navejar*, 718 F.3d at 696 (quoting *Pruitt*, 503 F.3d at 655).  "The question . . . is whether the plaintiff appears competent to litigate his own claims, given their degree of difficulty, and this includes the tasks that normally attend litigation: evidence gathering, preparing and responding to motions and other court filings, and trial."  *Pruitt*, 503 F.3d at 655. The Court also considers such factors as the plaintiff's "literacy, communication skills, education level, and litigation experience." *Id*.

Plaintiff's motion demonstrates that he has not made reasonable attempts to obtain counsel.  As to his educational level and other factors, he states that he has completed grade school only, and that he is dyslexic.  He references an attached document showing his math and reading average, but the document was not included with the motion.  Despite Plaintiff's educational disadvantages and dyslexia, his voluminous pleadings and motions display his ability to write legibly and with a creative and varied vocabulary, and demonstrate that he has the capacity to present the facts relevant to his claims.  Therefore, the recruitment of counsel is not warranted at this stage of the litigation.

Accordingly, the motion for recruitment of counsel (Doc. 4) is **DENIED** without prejudice.  The Court will remain open to appointing counsel as the case progresses, if Plaintiff submits a new motion that indicates the recruitment of counsel is appropriate.

The motion for service of process at government expense (Doc. 11) is **GRANTED IN PART AND DENIED IN PART.**  Service shall be ordered below on those Defendants who remain in the action.  No service shall be made on the dismissed Defendants.

As noted above, the various motions for leave to amend/correct or supplement the complaint (Docs. 13, 15, 16, 18, 19, 20, 21, and 22) are **DENIED,** and the Clerk **SHALL STRIKE FROM THE RECORD** the documents filed at Docs. 18 and 22.  The denial of these

motions is without prejudice to Plaintiff having one opportunity to submit a single new motion for leave to file supplemental complaint, and proposed supplemental complaint for the Court's consideration, which conforms with the guidelines enumerated above under "Group Two – Proposed Supplements." The time frame for such submission is to be determined by the United States Magistrate Judge.

**Disposition**

The Clerk is **DIRECTED** to file Plaintiff's April 14, 2015, proposed pleading, entitled "Correction for leave to amend complaint," consisting of 127 pages, as the Third Amended Complaint and exhibits.

The Clerk is **DIRECTED** to add **THOMAS SPILLER** (Pinckneyville Warden) as a Defendant in this action.

**COUNT 3** is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted against Defendant **SPILLER** in his individual capacity; Defendant **SPILLER** shall remain in the action in his official capacity only. **COUNT 4** is **DISMISSED** for failure to state a claim upon which relief may be granted. Defendant **BROWN** is **DISMISSED** from this action without prejudice. Defendant **MATTICKS** is **DISMISSED** from this action with prejudice.

The Clerk of Court shall prepare for Defendants **RECTOR, SHAH, LONG, FARARI, BROWN,** and **WARDEN SPILLER** (Official Capacity): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days

from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

Service shall not be made on the Unknown (John Doe Nurse) Defendant until such time as Plaintiff has identified this individual by name in a properly filed amended complaint. Plaintiff is **ADVISED** that it is Plaintiff's responsibility to provide the Court with the name and service address for this person.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to **United States Magistrate Judge Stephen C. Williams** for further pre-trial proceedings.

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Williams for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted.  *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against Plaintiff and remit the balance to Plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: September 28, 2015**

s/ MICHAEL J. REAGAN
United States District Judge